IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MANUEL LOPEZ,

    Plaintiff,

  v.

WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, F/K/A WORLD SAVINGS BANK ("WELLS FARGO"), AND DOES 1 THROUGH 50, INCLUSIVE,

    Defendant.

No. C 10-01645 WHA

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE**

## INTRODUCTION

In this action regarding a refinanced mortgage loan, defendant World Savings Bank moves to dismiss all five state claims asserted against it by plaintiff Manuel Lopez. Defendant also moves to strike portions of the complaint. Because the instant action involves a loan transaction between plaintiff and former federal savings association World Savings Bank, this order refers to defendant as World Savings Bank for the sake of clarity. For the reasons set forth below, defendant's motion to dismiss is **GRANTED**. Its motion to strike is **DENIED AS MOOT**.

## STATEMENT

This dispute involves a refinanced mortgage loan made by World Savings Bank, FSB ("WSB") to plaintiff Manuel Lopez through Remax Real Estate Company (Compl. ¶¶ 3, 13). WSB was later renamed Wachovia and is now a division of Wells Fargo Bank, N.A.

1  Plaintiff's complaint named Wachovia Mortgage Corporation as defendant, but because
2  Wachovia is now a division of Wells Fargo, Wells Fargo certified itself as the proper defendant
3  (Dkt. 2). At the time plaintiff executed his loan with WSB, however, WSB was a federal savings
4  bank governed by the Office of Thrift Supervision (Rapkine Decl. Exh. A).

5  On March 27, 2007, plaintiff refinanced his mortgage loan with WSB in order to expand
6  his property. Because he did not speak English, he negotiated the terms with a Remax agent
7  solely in Spanish. He paid $300 to have his credit checked but did not receive a copy of the
8  report. Defendant did not request his taxes or any type of proof of income. Two weeks later,
9  plaintiff was approved for the loan and met with a notary to sign the loan documents. The notary
10 indicated that she was in a hurry because she had left her children with a babysitter, so plaintiff
11 signed the documents without any explanation. He was under the impression that he was
12 obtaining a thirty-year fixed rate loan, but later learned that he had received a two-year fixed rate
13 loan. His payments began to increase an extra $200 per month. He was provided with a copy of
14 the loan terms written in English but not in Spanish. Defendant misrepresented and failed to
15 disclose material facts that, if known to plaintiff, would have led him to forego entering into the
16 refinance agreement. Defendant conspired to defraud plaintiff and acted toward him in a willful,
17 vexatious and malicious manner (Compl. ¶¶ 3–11).

18 Plaintiff initiated the instant action in Alameda County Superior Court, but it was brought
19 to federal court via federal-question removal jurisdiction. The complaint alleges claims for:
20 (1) unconscionable contract, (2) violation of Business & Professions Code § 17200, (3) violation
21 of California Civil Code § 1572, (4) breach of implied covenant of good faith and fair dealing,
22 and (5) declaratory relief (Compl. ¶¶ 20–63).

**ANALYSIS**

**1. STANDARD OF REVIEW.**

To survive a motion to dismiss for failure to state a claim, a pleading must contain
sufficient factual matter, accepted as true, to state a claim that is plausible on its face.
FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible
when there are sufficient factual allegations to draw a reasonable inference that defendants are

liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949-50. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Dismissal without leave to amend is only appropriate when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citation omitted).

### 2.  PREEMPTION.

Defendant argues that all five of plaintiff's claims are preempted by federal law because WSB was a federally chartered savings association regulated by the Office of Thrift Supervision ("OTS") pursuant to the Home Owners Loan Act ("HOLA") at the time of the loan (Br. at 2). *See* 12 U.S.C. 1461, *et seq*. This order declines to find that plaintiff's five state claims, as alleged, are preempted, at least at this stage on this record.

#### A.  World Savings Bank's Status As a Federal Savings Association.

It is undisputed that plaintiff refinanced his loan from WSB on or about March 21, 2007. Defendant contends that WSB was a federal savings bank at that time, that WSB was renamed Wachovia Mortgage, FSB in December 2007, and that Wachovia became a division of Wells Fargo in 2009 (Br. at 2). In support of this contention, defendant has submitted, *inter alia,* public records evidencing WSB's initial charter, its subsequent name change, its governance by OTS, and the certification of its conversion to a national bank with the name Wells Fargo Bank Southwest (Rapkine Decl. Exh. A–D). Defendant has also provided a copy of the deed of trust signed by plaintiff as Exhibit E. Defendant has requested that the Court take judicial notice of these documents.

In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). FRE 201 provides, "[a] judicially noticed fact must be one not subject to reasonable

3

dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." This order finds that these public records and government documents are not subject to reasonable dispute and takes judicial notice of Exhibits A through E. These judicially noticed facts show that at the time plaintiff signed his loan with WSB, that institution was regulated by OTS. WSB later changed its name to Wachovia Mortgage, FSB, remaining under the regulatory power of OTS, and therefore subject to HOLA. Wachovia became a division of Wells Fargo in 2009. Thus, although Wells Fargo is a federally chartered national bank under the National Bank Act, the instant action is governed by HOLA because the loan originated with WSB.

**B.     Preemption Analysis under HOLA.**

Congress enacted HOLA in 1933 as a "radical and comprehensive response to the inadequacies of the existing state [home mortgage] systems." *Conference of Federal Sav. & Loan Assns. v. Stein,* 604 F.2d 1256, 1257 (9th Cir. 1979). In enacting HOLA, Congress established the organization now known as the Office of Thrift Supervision and gave its director plenary authority to issue regulations governing federal savings and loans. 12 U.S.C. 1462a.

In 1996, OTS issued 12 C.F.R. 560.2. This regulation expressly provides for federal preemption of state law "purporting to regulate" federal savings associations:

> . . . OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities.

12 C.F.R. 560.2. Section 560.2 also provides a list of the types of state laws that are preempted.[1]

---

[1] Section 560.2(b) provides:

> Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:
> (1) Licensing, registration, filings, or reports by creditors;

4

OTS, however, has set forth exceptions to this broad preemption scheme. Section 560.2(c) provides that state contract, commercial, real property, and tort law, among others, are not preempted, "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [the regulation]."[2]

---

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f-7a and part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part; and

(13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j-3 and part 591 of this chapter.

[2] Section 560.2(c) provides:

State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

5

Contract and tort claims based on unfair competition statutes have been found exempt from HOLA preemption because they involve general laws governing all businesses, having only an incidental effect on a loan association's lending activities. *See Branick v. Downey Sav. and Loan Ass'n*, 24 Cal. Rptr. 3d 406, 412–13 (2005).

OTS has provided the following framework for preemption analysis:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c) [providing that state laws of general applicability only incidentally affecting federal savings associations are not preempted]. For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). Furthermore, a claim or state statute may be preempted by HOLA on an "as applied" or case-specific basis. *Id.* at 1006.

Defendant contends that plaintiff's state claims are all based upon plaintiff's allegations that: (1) WSB misrepresented the terms of the loan (two-year fixed rate versus thirty-year fixed rate), (2) WSB did not adequately determine if plaintiff could pay the loan back, (3) plaintiff signed the documents without any explanation, and (4) plaintiff did not receive the documents in Spanish (Br. at 2). Agreeing with defendant's characterization of the complaint, the Court finds insufficient grounds for preemption at this stage.

---

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

   (i) Furthers a vital state interest; and

   (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

6

Applying OTS' framework, that defendant misrepresented the terms of the loan is not preempted. Plaintiff alleges that defendant led him to believe that he was receiving a thirty-year fixed rate and then had him sign a loan agreement, in a language he did not understand, specifying a two-year fixed rate. As applied here, laws prohibiting blatant misrepresentation of a loan's terms are not expressly preempted in Section 560.2(b). While it is true that such laws would affect lending, the presumption of preemption is reversed because they fit within the confines of Section 560.2(c), which provides an exception for claims involving contract or tort law. Plaintiff's allegations as stated in the complaint are admittedly vague. But accepting them as true, as required here, this order finds that defendant may be liable for claims based upon breach of contract and tort laws that are of general applicability to all businesses and that only incidentally affect lending operations. This is the same reasoning the court in *Branick v. Downey Savings and Loan Association* applied in finding that the plaintiff's claims for violation of state unfair competition laws were not preempted by HOLA. *See Branick*, 24 Cal. Rptr. 3d at 412–13.

Every decision cited by defendant has found that the plaintiffs' allegations were expressly preempted by 12 C.F.R. 560.2(b) and have ended their inquiries there. For example, the plaintiffs in *Silvas* brought claims for unfair advertising and unfair competition against a federal savings association under California Business and Professions Code §§ 17500 and 17200. *See Silvas*, 514 F.3d at 1003. The Ninth Circuit upheld the dismissal of the claims because they were based on the types of laws listed Section 560.2(b), specifically subsections (b)(9) and (b)(5), which involved state laws purporting to impose requirements regarding disclosure and advertising as well as loan-related fees. *Id.* at 1006-07. A finding of express preemption also proved determinative in *Weiss v. Washington Mutual Bank*, where the plaintiff's claims were premised upon a lack of disclosure regarding prepayment penalties, a lending practice expressly preempted by 12 C.F.R. 560.2(b). 147 Cal. App. 4th 72 (2007).

Defendant argues that because each of plaintiff's state claims is premised upon allegations regarding "terms of credit," "disclosure," and "processing [and] origination" of mortgages, they are expressly preempted by 12 C.F.R. 560.2(b). As explained above, however, laws prohibiting misrepresentation of a loan's material terms are not expressly preempted by

7

1  Section 560.2(b). This is where the instant action sharply diverges from the cited case law.
2  Unlike those decisions, this order does not find the claims at issue expressly preempted by
3  Section 560.2(b). Nor does it find them preempted by the other provisions of Section 560.2.
4  Although this order rejects preemption at this stage, it is premature to make a final
5  decision on this issue until plaintiff has properly pled claims under state law. Even then, it might
6  be premature to rule on a preemption defense until a trial can be held to allow a record on the
7  incidental effects of the state rules in question on the business of lending by a federal savings
8  association.
9  Turning to the adequacy of pleading of the state law claims, each state claim will be
10 **DISMISSED** but with leave to seek to amend.

### 3. FIRST CLAIM: UNCONSCIONABLE CONTRACT.

Defendant is accused of violating California Civil Code § 1670.5 by causing plaintiff to make an uninformed decision to enter into an unconscionable loan agreement (Compl. ¶¶ 20–29). Plaintiff's complaint alleges that all of the loan documentation was written in English, even though plaintiff only knew Spanish and negotiated the loan in Spanish. Section 1670.5 provides: "if the court as a matter of law finds [a] contract or any clause of [a] contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . . ."

Section 1670.5, however, does not create an affirmative claim but merely codifies the *defense* of unconscionability. *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 766 (1989). Plaintiff therefore states no claim for relief under this statute. That said, a potential defendant is always entitled to seek declaratory relief to establish unconscionability as a defense so long as the case and controversy requirement of Article III is pled and established. Jurisdiction to award declaratory relief exists only in case of actual controversy. *American States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir. 1994). Plaintiff has not pled that an actual, present controversy exists regarding the enforcement of the contract. He has not pled, for example, that someone is trying to foreclose or is threatening to do so. Until plaintiff meets the Article III requirement an award of declaratory relief is unwarranted.

8

Plaintiff's complaint also alleges that defendant violated California Civil Code § 1632, which states: "Any person engaged in a trade or business who negotiates primarily in Spanish . . . orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated . . . ." This rule applies to a "loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provisions of Article 7 (commencing with Section 10240)." Cal. Civ. Code § 1632(b)(4). Section 10240 in turn applies to certain real estate loans secured by real property that are negotiated exclusively by a real estate broker. Cal. Bus. & Prof. Code § 10240.

Plaintiff fails to plead a claim against defendant for a violation of Section 1632, as he does not allege that defendant WSB was a real estate broker and thus subject to the requirement to provide a translation. Plaintiff alleges that Hugo De Oyos, working for Remax Real Estate Company was the broker (Compl. ¶ 3). Accordingly, plaintiff's claim for violation of Section 1632 is dismissed. The undersigned also notes that this claim may be barred by the applicable statute of limitations and that plaintiff has not alleged that he has or can tender funds sufficient to effectuate a rescission of the loan, as required by Section 1632(k). *See* Cal. Code Civ. Pro. § 340(a); Cal. Civ. Code §§ 1632(k), 1691(b).

Plaintiff has not yet met the Article III pleading requirement for declaratory relief. This requirement must be met if plaintiff is to receive declaratory relief for any of his state claims. Nor has he alleged facts sufficient for a claim under Section 1632. Accordingly, his claim for unconscionable contract is **DISMISSED**.

### 4. SECOND CLAIM: VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200.

Plaintiff's second claim alleges that defendants violated California Business & Professions Code § 17200 (Compl. ¶¶ 30–39). To state a claim for unfair competition pursuant to Section 17200, a plaintiff must allege that a defendant engaged in an "unlawful, unfair, or fraudulent business act or practice" or in "unfair, deceptive, untrue or misleading advertising."

9

Cal. Bus. & Prof. Code § 17200. The complaint fails to state a claim under all three prongs of the statute.

The "unlawful" prong of the statute incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000). A defendant cannot be liable under Section 17200 for committing "unlawful" business practices without having violated another law. As discussed below, the complaint fails to plead sufficiently the violation of any law.

Plaintiff contends that defendant engaged in an "unlawful" business practice in violation of Section 17200 by extending the loan to him without acquiring any proof of plaintiff's income or conducting an adequate due diligence inquiry to determine if he could pay the loan back (Compl. ¶ 4). A financial institution, however, owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its role as a mere money lender. *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal. App. 3d 1089, 1096 (1991). Without factual allegations that show defendant stands in the place of plaintiff's agent, there is no violation alleged and dismissal is appropriate.

To the extent that plaintiff's Section 17200 "unlawful" business practices claim is based on California Civil Code § 1670.5, as discussed above, he does not adequately allege a violation of law. He similarly fails to state a claim for relief for violation of California Civil Code § 1632.

Given that the complaint fails to sufficiently allege the violation of any law, plaintiff's claim under the "unlawful" prong of Section 17200 fails.

Moreover, the complaint similarly fails to state a claim under the "unfair" prong of Section 17200. "The term 'unfair . . . business act or practice' . . . mean[s] deceptive conduct that injures consumers and competitors." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 195–96 (1999). The complaint fails to allege facts sufficiently demonstrating that defendant engaged in deceptive conduct that caused plaintiff injury. The allegations in the complaint are conclusory in nature and insufficient as they stand.

10

To the extent that plaintiff's Section 17200 claim is predicated on the "fraudulent" prong of the statute, it fails to state a claim for relief as well. Allegations of fraudulent conduct under Section 17200 must satisfy the heightened pleading requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-05 (9th Cir. 2003). Rule 9(b) demands that averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id*. at 1106. The plaintiff must set forth what is false or misleading about a statement, and why it is false. *Id.*

Plaintiff did not plead with the requisite particularity the specific misrepresentations that are attributable to defendant and which individuals made them. Plaintiff's Section 17200 claim fails to satisfy the heightened pleading requirements of Rule 9(b) to state a cognizable claim based on the "fraudulent" prong of the statute.

Accordingly, plaintiff's California Business & Professions Code § 17200 claim is **DISMISSED.**

### 5. THIRD CLAIM: VIOLATION OF CALIFORNIA CIVIL CODE § 1572.

Plaintiff's third claim alleges fraud under California Civil Code § 1572. The particularity requirements of Rule 9(b) apply. Section 1572 provides:

> Actual fraud . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
>
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
>
> 4. A promise made without any intention of performing it; or,
>
> 5. Any other act fitted to deceive.

The complaint alleges that defendants' misrepresentations, failures to disclose, and failure to investigate as described above were made with the intent to induce the unsophisticated plaintiff

11

1  to accept an unfavorable loan (Compl. ¶ 41).  The complaint does not state, however, "the who,
2  what, when, where, and how" of the misconduct charged.  *See Vess*, 317 F.3d at 1103–05.
3  Plaintiff does not plead the specific representations that are attributable to defendants, the identity
4  of the employees who made the representations, their authority to speak, what they said or wrote,
5  and when it was said or written.  Furthermore, the complaint alleges that defendants acted in a
6  manner that was "willful . . . and maliciously calculated," but such conclusory, vague language
7  is insufficient (*see* Compl. ¶ 9).  Rule 9(b) does not allow a complaint to merely lump multiple
8  defendants together and make conclusory accusations regarding their actions and intentions.

9  Plaintiff requests that the pleading standard for fraud be relaxed in this instance.
10  Citing *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153 (1991), he argues that
11  because defendant is in a greater position to know the names of the individuals who perpetrated
12  the fraud, plaintiff should not be forced to name them (Opp. 6–7).  This exception did not apply
13  in *Tarmann*, and it does not apply here.  Following *Tarmann*'s reasoning, defendant has no
14  more reason to know who made the allegedly false representations to plaintiff than plaintiff.
15  *See Tarmann*, 2 Cal. App. 4th at 158.

16  Plaintiff's claim for fraud under California Civil Code § 1572 is thus **DISMISSED**.

17  **6.  FOURTH CLAIM:  BREACH OF IMPLIED COVENANT OF
        GOOD FAITH AND FAIR DEALING.**

18  Plaintiff's contends that defendant has breached the implied covenant of good faith and
19  fair dealing but does not specify whether his claim is based upon contract law or tort law.
20  Under California law, a claim for breach of implied covenant under contract law is necessarily
21  based on the existence of an underlying contractual relationship.  The essence of the covenant is
22  that neither party to the contract will do anything which would deprive the other of the benefits of
23  the contract.  The duty of good faith and fair dealing, however, is "a supplement to an existing
24  contract, and thus it does not require parties to negotiate in good faith prior to any agreement."
25  *McClain v. Octagon Plaza,* LLC, 159 Cal. App. 4th 784, 799 (2008).  Thus, to the extent that the
26  complaint's allegations stem from the formation and negotiation of the loan, plaintiff's claim for
27  breach of the covenant must be dismissed.
28

12

Moreover, no implied covenant tort is available to plaintiff. "Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Federal Ins. Co.,* 307 F.3d 944, 955 (9th Cir. 2002). California courts do not invoke a special relationship between a lender and borrower absent special circumstances with "fiduciary characteristics." *Oaks Mgmt. Corp. v. Superior Court,* 145 Cal. App. 4th 453, 466 (2006). The complaint does not allege facts establishing a "special relationship" between plaintiff and defendant that could justify extending tort liability.

As such, plaintiff's claim for breach of the covenant of good faith and fair dealing must be **DISMISSED**.

### 7. FIFTH CLAIM: DECLARATORY RELIEF.

Plaintiff's complaint requests a "declaration of rights and duties of the parties herein . . . to determine the actual status and validity of the loan, deed of trust, nominated beneficiaries, actual beneficiaries . . ." (Compl. ¶ 63). "Declaratory relief is only appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986). As described in section three above, a plaintiff must plead that a present and actual controversy exists in order to receive declaratory relief. Furthermore, declaratory relief is not warranted in a case in which a complaint makes no case on the merits. *People v. Ray*, 181 Cal. App. 2d 64, 69 (1960). Plaintiff's complaint fails to meet the above criteria and does not allege a viable substantive claim. The complaint does not adequately plead why declaratory relief is appropriate, and plaintiff makes no reference to this claim in his opposition to defendant's motion.

Accordingly, plaintiff's claim for declaratory relief is **DISMISSED**.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss all claims asserted in the complaint is **GRANTED**. In light of this ruling, defendant's motion to strike is **DENIED AS MOOT**.

13

1    Within **FOURTEEN CALENDAR DAYS**, plaintiff may file a motion on the normal 35-day
2 track seeking to cure the foregoing deficiencies.  A proposed amended complaint must be
3 appended to such a motion, and the motion should clearly explain why each amended claim
4 overcomes the deficiencies stated herein.

5    The Court notes that plaintiff's counsel failed to appear at the July 15 hearing on the
6 instant motion.  Defendant's counsel proceeded with argument, stating that plaintiff's claims are
7 barred by the statute of frauds and parol evidence rule.  This order does not decide these issues,
8 but plaintiff's motion should be mindful of them.

**IT IS SO ORDERED.**

Dated:  July 19, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14